

SO ORDERED.

Robert J. Faris
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT

DISTRICT OF HAWAII

| In re | Case No. 13-00353 |
|---|---|
| 1250 OCEANSIDE PARTNERS, | Chapter 11 |
| Debtor. | |
| WILLIAM BATISTE, et al., | Adv. Pro. No. 16-90014 |
| Plaintiffs, | Re: Dkt. Nos. 37, 41 |
| vs. | |
| SUN KONA FINANCE I, LLC, et al., | |
| Defendants. | |

PROPOSED FINDINGS AND RECOMMENDED DECISION ON
CROSS-MOTIONS FOR SUMMARY JUDGMENT

In this adversary proceeding, the plaintiffs argue that the defendants breached a settlement agreement made in connection with the confirmation of a chapter 11 plan. For the following reasons, I recommend that the district court grant summary

judgment in favor of the defendants on all claims.

I.  FACTS

This adversary proceeding grows out of a failed real estate development called Hokuli'a. The debtors intended to convert a large piece of undeveloped land on the Kona coast of Hawaii Island into high-end house lots along with golf courses and luxury amenities.[1]

The Hokuli'a project got underway, and the developers were able to sell some of the house lots. Among the purchasers was a group now led by William Batiste (the "Batiste creditors").[2]

The developers told the lot purchasers that the developers would complete the project, including the amenities, by certain dates. But because of a series of misfortunes, such as lawsuits and natural disasters, the Hokuli'a development stalled and the promised amenities were never finished.[3]

In 2008, the debtors' primary lender declared default and began to exercise its remedies. Sun Kona Finance I, LLC ("SKFI") eventually purchased about $600 million of debt and the related security interests in the Hokuli'a project.[4]

---

[1] *In re 1250 Oceanside Partners*, Case No. 13-00353, Dkt. No. 1213 at 2.

[2] *Id.*

[3] *Id.*

[4] *Id.* at 2-3.

U.S. Bankruptcy Court - Hawaii   #16-90014   Dkt # 65   Filed 11/02/16   Page 2 of 13

In the meantime, several of the lot purchasers, including the Batiste creditors, asserted claims against the developers. The purchasers alleged that the developers had breached their promises to complete the Hokuli'a development.[5]

In 2013, the debtors, which own the Hokuli'a project, commenced chapter 11 cases.[6]

On August 15, 2013, the debtors and SKFI proposed a plan of reorganization.[7] The plan (briefly summarized) provided that (1) SKFI would reduce its secured claim from $627 million to $40 million and waive its unsecured claims, (2) SKFI would extend a new loan of $65 million to fund the plan and recapitalize the debtors, (3) a $20 million debt to the County of Hawaii would be paid in full, (4) the general unsecured creditors (including the lot purchasers) would receive pro rata shares of a fund of $750,000, in satisfaction of claims totaling about $33.7 million, and (5) the old equity interests in the debtors would be extinguished, and SKFI would acquire new equity interests in exchange for releasing a post-petition loan to the debtors in possession.[8]

The Batiste creditors raised a number of objections during the confirmation

---

[5] *Id.* at 3.

[6] *Id.*

[7] Case No. 13-00353, Dkt. No. 539.

[8] *Id.*

U.S. Bankruptcy Court - Hawaii   #16-90014   Dkt # 65   Filed  11/02/16   Page 3 of 13

process.[9] The Batiste creditors argued that the SKFI claims should be disallowed or subordinated, so that lot owners would be paid in full before SKFI.[10] They initiated three adversary proceedings, objected to SKFI's claims, objected to the proposed disclosure statement and plan, conducted discovery, and filed many other papers.[11] The Batiste creditors, the debtors, and SKFI incurred significant expense in this litigation.[12] The Bays Lung Rose & Holma law firm represented the Batiste creditors throughout.

On May 12, 2014, less than half an hour before the plan confirmation hearing was to begin, the parties signed a term sheet settling the confirmation dispute.[13] Among other terms, the Batiste creditors agreed to withdraw their objections to plan confirmation and SKFI's claim, dismiss their adversary proceedings, and release various claims against certain individuals and entities affiliated with the debtors and SKFI. Additionally, another group of creditors (the Davis creditors) also agreed to drop their objections to confirmation.[14]

In exchange for withdrawing the creditors' claims and objections, SKFI and the

---

[9] Case No. 13-00353, Dkt. No. 1213 at 4.

[10] *Id.*

[11] *Id.*

[12] *Id.* at 4-5.

[13] *Id.* at 5.

[14] *Id.*

4

debtors increased the unsecured creditors fund, out of which the lot owners and others would be paid, from $750,000 to $1,550,000.[15] Most importantly for this adversary proceeding, the term sheet included the following provision: "SKFI and the Davis creditors will not oppose an administrative expense claim by the Bays firm in the amount of $250,000 for making a substantial contribution to the case."[16]

Upon withdrawal of the Davis and Batiste creditors' objections, the plan was confirmed without a contested hearing.[17]

The Batiste creditors filed a claim for reimbursement of a portion of their attorneys' fees and costs as administrative expenses.[18] The debtors filed an objection.[19] SKFI did not file an objection, but its lead bankruptcy counsel, James A. Wagner, signed a declaration that the debtors submitted in support of their objection.[20] Mr. Wagner's declaration set forth the history of the confirmation litigation and settlement negotiations and did not argue that the motion should or should not be granted. Mr. Wagner also spoke at the hearing on behalf of SKFI; he reiterated and

---

[15] *William Batiste, et al. v. Sun Kona Finance I, LLC, et al. (In re 1250 Oceanside Partners)*, Adv. No. 16-90014, Dkt. No. 47-3 at 9.

[16] *Id.*

[17] Case No. 13-00353, Dkt. No. 1009.

[18] Adv. No. 16-90014, Dkt. No. 47-5.

[19] Adv. No. 16-90014, Dkt. No. 47-6.

[20] Adv. No. 16-90014, Dkt. No. 47-6 at 25.

U.S. Bankruptcy Court - Hawaii   #16-90014   Dkt # 65   Filed 11/02/16   Page 5 of 13

clarified the statements made in his declaration.[21]

After the hearing, I held that the Batiste creditors were entitled to an administrative claim in the amount of $55,000.00.[22] No one appealed this decision.

On June 22, 2015, the bankruptcy case was closed.[23]

On September 1, 2015, the Batiste creditors sued SKFI in Hawaii state court, alleging that SKFI breached the term sheet and committed fraud, and that punitive damages were warranted. SKFI removed the case to the federal district court, and that court referred the case to the bankruptcy court for pretrial matters.[24]

The Batiste creditors have moved for partial summary judgment on their claim for breach of contract. SKFI has moved for summary judgment on the entire complaint.

## II. JURISDICTION AND VENUE

The bankruptcy court has personal jurisdiction and venue is proper. The bankruptcy court has subject matter jurisdiction over bankruptcy cases and civil proceedings arising under the Bankruptcy Code, arising in a bankruptcy case, or related to a bankruptcy case. The district court has determined that the bankruptcy

---

[21] Adv. No. 16-90014, Dkt. No. 49-4 at 15-16.

[22] Adv. No. 16-90014, Dkt. No. 47-7 at 2.

[23] Case No. 13-00353, Dkt. No. 1464.

[24] Adv. No. 16-90014, Dkt. No. 2.

6

U.S. Bankruptcy Court - Hawaii   #16-90014   Dkt # 65   Filed 11/02/16   Page 6 of 13

court also has subject matter jurisdiction.[25]

There remains the question whether the bankruptcy court has the power to enter a final judgment, reviewable under the usual appellate standards, or instead may only enter proposed findings of fact and a recommended judgment for de novo review by the district court.

The bankruptcy court can enter final judgment in a "core proceeding,"[26] unless *Stern v. Marshall*[27] applies. A "core proceeding" is one that "arises under" the Bankruptcy Code or "arises in" a bankruptcy case. A proceeding that is "related to" a bankruptcy case is not a core proceeding. All parties agree that this is not a core proceeding. This is consistent with the district court's holding that the bankruptcy court has subject matter jurisdiction because this case is "related to" the debtors' bankruptcy case.[28] Therefore, I conclude that this is a non-core proceeding.

The bankruptcy court can enter a final judgment in a non-core proceeding if all parties consent,[29] but the Batiste creditors have not consented.[30]

---

[25] Adv. No. 16-90014, Dkt. No. 25.

[26] 28 U.S.C. § 157(b)(2).

[27] 564 U.S. 462 (2011).

[28] Adv. No. 16-90014, Dkt. No. 25 at 27.

[29] 28 U.S.C. § 157(c)(2).

[30] SKFI filed a statement clarifying that it consented to this court's entry of an order (dkt. no. 62), however the Batiste creditors did not affirmatively consent.

7

The district court also held that this proceeding is within the bankruptcy court's ancillary jurisdiction to interpret and enforce its own orders. SKFI suggests that the court can enter a final judgment when it exercises its ancillary jurisdiction. SKFI offers no authority to support this argument and I have not found any.

In my view, the applicability of ancillary jurisdiction has little to do with question of whether the bankruptcy court can enter a final judgment. The limitation on the bankruptcy court's powers stems from the constitutional limits on the powers that Congress may confer on judges who lack life tenure. The constitutional limits are the same regardless of the statutory basis for the court's jurisdiction; in other words, if the bankruptcy court lacks constitutional authority to enter a final judgment, it cannot do so regardless of whether it is exercising "related to" or "ancillary" jurisdiction.

The Supreme Court's case law makes it challenging to determine exactly where the constitutional limit lies. Ordinarily, a dispute between two non-debtor parties would be a non-core proceeding. But this dispute involves the interpretation of an agreement that resolved a core proceeding–a dispute about the confirmation of a chapter 11 plan of reorganization–and that was incorporated in this court's order confirming the plan. There is good reason to think that, if a bankruptcy court approves a settlement agreement and enters an order in a core proceeding, a subsequent proceeding to interpret or enforce the agreement and order is also a core

8

proceeding.

But, given the ambiguity in the Supreme Court's case law, it is more prudent to issue proposed findings and a recommended judgment for the district court's de novo review. (It goes without saying that, if the district court thinks that the bankruptcy court has power to enter final judgment in this matter, the district court could apply a more deferential standard of review.)

## III. SUMMARY JUDGMENT STANDARD

Summary judgment is proper when the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law.[31] A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party."[32] In considering a motion for summary judgment, the court "may not make credibility determinations or weight the evidence."[33] Evidence must be viewed in the light most favorable to the non-moving party and draw all justifiable inferences in the non-moving party's favor.[34] Rule 56(c) mandates the entry

---

[31] Fed. R. Civ. P. 56(c), made applicable by Fed. R. Bankr. P. 7056; *Celotex Corp. V. Catrett*, 477 U.S. 317, 323 (1986).

[32] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

[33] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986).

[34] *Id.* at 255.

9

of summary judgment after adequate time for discovery against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case as to which that party will bear the burden of proof at trial.[35]

## IV. DISCUSSION

### A. Breach of Contract

Count 1 of the complaint alleges breach of contract by SKFI for opposing the Batiste creditors' administrative expense application.

Under Hawaii law, to prevail on a breach of contract claim, the plaintiff must identify (1) the contract at issue; (2) the parties to the contract; (3) whether plaintiffs performed under the contract; (4) the particular provision of the contract allegedly violated by defendant; and (5) when and how defendant allegedly breached the contract.[36] The first four elements are not in dispute.

The Batiste parties argue that SKFI breached the settlement agreement by opposing the Bays firms' motion for compensation. But SKFI did not oppose the motion; rather, its counsel provided an evidentiary declaration in support of the debtor's objection. The settlement agreement did not preclude counsel for SKFI from providing evidence relevant to the Batiste creditors' reimbursement claim.

---

[35] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

[36] *Keahole Point Fish LLC v. Skretting Can. Inc.*, 971 F.Supp. 2d 1017, 1040 (D. Haw. 2013).

The interpretation advocated by the Batiste creditors would create a conflict with public policy. All citizens have a duty to provide relevant evidence in judicial proceedings.[37] When the parties submitted the term sheet to me for approval, no one said that the agreement was intended to prevent anyone from fulfilling this important duty. If that intention had been disclosed, I would not have approved the agreement.

Further, the Batiste creditors' interpretation would create a conflict with Mr. Wagner's ethical duties. Every attorney owes a duty of candor to the tribunal.[38] An agreement that precludes an attorney from providing truthful information to a court would also violate this public policy.

Therefore, SKFI did not breach the term sheet when Mr. Wagner signed a declaration that the debtors submitted in support of their objection and spoke about the declaration at the hearing. Because there is no genuine dispute as to any material fact, I recommend that the district court grant summary judgment in favor of SKFI on Count 1.

### B. Fraud

Count 2 of the complaint alleges that SKFI committed fraud. The Batiste creditors contend that SKFI made express and implied representations that it would

---

[37] *See* Fed. R. Bankr. P. 9011(b).

[38] HRPC Rule 3.3.

11

U.S. Bankruptcy Court - Hawaii   #16-90014   Dkt # 65   Filed  11/02/16   Page 11 of 13

not oppose the claim for reimbursement in order to induce the Batiste creditors to dismiss the adversary proceeding and release various claims affiliated with the debtors and SKFI.

To prove fraud, a party must establish the following elements:(1) false representations were made by defendants, (2) with knowledge of their falsity (or without knowledge of their truth or falsity), (3) in contemplation of plaintiff's reliance upon these false representations, and (4) plaintiff did rely upon them.[39]

The Batiste creditors have offered no evidence that SKFI committed fraud in connection with the agreement. SKFI made no representation that the debtor would not oppose the application or that its counsel would not provide evidence respecting such an objection. The Batiste creditors knew that the debtor might object to the application because the debtor's counsel insisted, and the Batiste creditors agreed, that the debtor retain that right.[40]

The Batiste creditors have had an ample opportunity to uncover evidence of fraud, but they offer none. The Batiste creditors have failed to establish that here is a genuine dispute of material fact regarding whether SKFI made any representations that were false and on which the Batiste creditors reasonably relied. Therefore, I

---

[39] *Bulgo v. Munoz*, 853 F.2d 710, 716 (9th Cir. 1988).

[40] Adv. No. 16-90014, Dkt. No. 47-2 at 5.

recommend that the district court grant summary judgment in favor of SKFI on Count 2.

### C. Punitive Damages

Count 3 of the complaint seeks punitive damages for the breach of contract and fraud claims. The Batiste creditors allege that SKFI's conduct was willful, wanton, and with reckless disregard for their rights, therefore punitive damages are recoverable.

Since the purpose of punitive damages is not compensation of the plaintiff but rather punishment and deterrence, such damages are awarded only when the egregious nature of the defendant's conduct makes such a remedy appropriate.[41] In order to recover punitive damages based on breach of contract, one must show that contract was breached in such a willful, wanton and reckless manner as to result in tortious injury.[42]

Because there was no breach of contract and no fraud, there is no basis for punitive or any other damages. Therefore, I recommend that the district court grant summary judgment in favor of SKFI on Count 3.

### END OF DECISION

---

[41] *Amfac, Inc. v. Waikiki Beachcomber Inv. Co.*, 74 Haw. 85, 138 (1992)(citing *Masaki v. General Motors Corp.*, 71 Haw. 1, 12 (1989)).

[42] *Iddings v. Mee-Lee*, 82 Haw. 1, 8 (1996)(citing *Ross v. Stouffer Hotel Co. (Hawai'i) Ltd.*, 76 Haw. 454, 466 (1994)).